All right, counsel. Are you dividing your time in any way? Actually, I'm just going to go first. Okay, but you have 20 minutes, so... Yeah, that would be 20 minutes. Right, so have you divided your time? It seems like 10 minutes isn't enough. Okay, great. All right. All right. You can proceed. Your Honors, and may it please the Court, I'm Shekli Murthy, representing Barry Uko in this case. This case presents an interesting and novel fact situation involving the forfeiture of a family home as a substitute asset, where nothing illegal had ever taken place in the home, and there was no showing that the home was purchased with tainted funds. I thought the case that was very interesting from this Court was the 6380 Little Canyon Road case. It talks about degrees of punishment, and it talks about the punishment being monetary or otherwise, and specifically points to the intangible subjective value of the property, e.g., whether it is the family home, and the hardship to the defendant, including the effect of the forfeiture on the defendant's family. So in this case, we're talking about a residence, which is the home of minor children, and obviously that is the most severe punishment for a parent, to think about their children being ejected from the family home where they've lived for nine years. It's not clear that the children were even living in the family home. In fact, three of them were adults. Your Honor, I guess what might be helpful would be Leslie Shepard's PSR, where the probation officer talks about going to the house, and the kids each have their room. There's Barry Uko, Jr., who was 13 at the time, and Brittany Uko, and they're both attending schools in the area, and it describes the home itself as being in a normal neighborhood, and there's no evidence of any kind of gang or drug, obviously. This isn't a drug case type of activity, and it's just a normal home for these children, and they do go to school locally. So that might be helpful to the Court. This is kind of a novel issue, and I've sort of looked at the cases and extrapolated four factors that might be helpful in terms of some sort of balancing test. The first one would be that obviously the connection or nexus between the illegal activity and the home, and obviously in every substitute assets case, there is no connection or nexus. Otherwise, the substitute assets provision wouldn't come into play. Now, that alone is not enough to say that the government can't take the asset, because the government is often faced with situations involving big-time drug dealers with jet planes and yachts, and the government has to be able to take those assets. So then we would move on to the next factor, which is the proportionality and the degree of punishment, and I had just read some language from 6380 Little Canyon talking about it's not just monetary. You look at you put yourself in the shoes of the parent, and how would they feel? You know, you're in prison. You did something wrong. Your wife's in prison. Your minor kids are in the house, and you think about your kids just getting thrown out of the house and the house taken, and that to me seems like a very, very, very serious punishment. And then the final factor, the third factor, would be society's interests. And in this case, the society's interests, the government's interests, would be to recoup the $100,000, which was the sole equity in this house, versus the total loss was large, $2.5 million. So the government gets $100,000 on $2.5 million? You see, the problem is that there's no showing that this house had anything to do with that loss. In fact, the showing is sort of otherwise, that the wife in this house, Leslie Shepard, she had actually always held a full-time job and had been paying small amounts of this mortgage. So it's not like somebody defrauded of cheap. How would you propose the government recovers the loss that's been sustained here by the conduct of the defendant? Hopefully in some way that doesn't involve throwing children out on the street. How would they do it, not hopefully? Your Honor, I wish in this case that there were assets to substitute assets to forfeit that would not affect society in such a negative way and would not affect the children in such a negative way. What's the $2.5 million? On the record, the government hasn't been able to trace it. I have no idea. So. Some of it's Switzerland. Right. And this is a substitute assets case. So it's a case obviously where the defendant has been hiding stuff. The defendant has not been, you know, doing right. And that's a given. And I'm not here to argue otherwise. I know it's a house and there's some equity there apparently that the government can get some small recovery. Right. And then we come. That's certainly a just result, isn't it? Well, that would, I guess, go to factor number three, which is society's interest in recouping that $100,000. Geez, we're running a deficit back there every year with the budget. Yeah. But the problem is that when you throw children out on the street and you disrupt a family, the cost to society can be much higher than $100,000. And that's, again. The problem with the children, every time you send a mother to jail, there's a problem with the children. Right. Usually they go to other relatives who I would assume have houses of their own. I don't know that you need to keep the family home for the two children. It's very nice if there's no other problem involved, but they could go to other relatives or they could go into a rental place. They don't necessarily need the family home to keep. The problem is that when the parents commit crimes, they go to jail or these kids are left there on their own. Yes, it's a problem, Judge Holland. And, again, just coming back to what the Eighth Amendment requires, because, you know, that's sort of the bottom line in this case. We have a lot of case law out there about limits on sort of excessive fines. The problem is that it's not a fine. This is restitution. I agree with you. It certainly is restitution. It would also be considered punishment under the United States Supreme Court cases, though. So then we have to look at the degree of punishment. And, again, I just sort of put forth these four factors as a balancing test. And, again, where there's no connection or nexus at all, that is really not a situation that the U.S. Supreme Court has addressed. They haven't gotten to any cases where a family home has been forfeited, where there's been no connection or nexus. Now, your client's probably going to be entitled to a limited remand under Ameline. Will you be able to re-litigate this forfeiture question within that? It's considered part of the sentence. I would believe that the record is complete enough for this Court to be able to make a finding on the issue. It has been presented to the District Court by Barry Yuko's wife, the co-defendant. If you can move on this and you take an Ameline remand, then maybe you're going to do more time. I'm sorry, Your Honor? Have you considered it? I'm sorry, Judge, but did I... If you take... If you prevail here and the money or the house does not... If the house does not forfeit it and the trial court looks at punishment, they may even go beyond the guidelines, right? I believe we would have a right to appeal in those circumstances, and I... You may get a worse sentence on an Ameline remand than you would otherwise would if you prevailed on the house. Wouldn't you rather have both issues back before the trial court together? It seems like either way they're going to end up before this Court because, you know, whatever the district judge has found before, if the district judge makes that same finding, there's going to be an appeal and it's going to come back. And the substitute assets issue is not going anywhere. As long as the government is going to forfeit family homes in these circumstances, that has to be resolved. The U.S. Supreme Court has not resolved it. This Court hasn't really been faced with it. So it's not... It's going to come here one way or the other. I'd like to reserve some time for rebuttal, if I may. Thank you. Good morning, Your Honors. May it please the Court. James Crawford on behalf of Leslie Shepard. Your Honors, I believe the briefs cover the majority of the issues that I'd like to address, but I would like to address the brutal error with regard to the denial of Ms. Shepard's right of confrontation of Barry Yuko during the interview with the police. Under Crawford v. Washington, basically, the Sixth Amendment interpretation of the right of confrontation has been significantly changed. We are now looking at statements. The Sixth Amendment attaches that it's testimonial, and testimonial based on Crawford and several Ninth Circuit decisions and state court decisions, for that matter. The courts have all come together and they basically have agreed that an interpretation of testimonial under Crawford, although left in vague terms, certainly includes a police interrogation of a subject. Was the redacted written confession ever entered into evidence? I don't know. The officer testified as to the statements that Mr. Yuko made. I don't think an actual written statement had been admitted, no. So was the agent testifying about what Barry Yuko had said to him? Yes, Your Honor. Okay. So is that hearsay or is it an admission? They're admissions by Mr. Yuko and would be admissible against Mr. Yuko if he were to be tried singly. However, tried in unitary trial. Doesn't Crawford only apply to testimonial hearsay? That's my understanding of the statements are testimonial. If it's hearsay, it is hearsay as to my client. It's not hearsay as to the co-defendant. So I would believe that it would still be testimonial for purposes of Crawford. And it was in response to questioning. And then we have the – I think it's like a two-prong attack. First, we have to look at Crawford and we have to determine if it was testimonial in order for the Sixth Amendment to attach in the first place. But then the Bruton limitations when there's a joint trial involving two defendants. And in this particular case, the statements, as the AUSA has indicated in their brief, did not directly – they don't say Leslie Shepard participated in this offense. No, it is not. It was redacted so as to protect her identity in the statement. However, Ms. Shepard was also – when she was indicted, the indictment charged under basically two theories of liability. It's 18 U.S.C. section 2 and section 1347. Under section 1347, she would have been a principal. Under section 2, she would have been an aider and abetter. As an aider and abetter, under several cases – I don't know if I cited one in the brief, but you have to establish for aider and abetter liability that the defendant had the specific intent to facilitate the commission of the crime by another. The defendant had the requisite intent of the underlying offense. The defendant assisted or participated in the commission of the offense. And someone committed the underlying offense. Those are the elements in order to establish aider and abetter liability under section 2 of 18 U.S.C. In this particular case, the statements by Mr. Yuko indicate that Mr. Yuko committed – no, he doesn't – it's not a full-blown confession,  And Mr. Yuko's statement served as a basis to establish the commission of the offense. Those are the elements under aider and abetter liability. And that would implicate Ms. Sheppard as well as an aider and abetter. And based upon that, it is testimonial and it does deserve to incriminate her so as to have entitled her to the right of confrontation. And I believe that the trial court erred in allowing the statement to come in. But more importantly, and I believe what the Court also needs to consider, is I think the Court had indicated with the co-defendant that there would be an entitlement to a limited remand under Ameline. Counsel, is there anything in the record anywhere where the district court has in essence said, without regard to the sentencing guidelines, I would impose the same sentence or words to that effect? I don't recall the Court indicating that whether or not the guidelines existed or not, this is the sentence he would have imposed. To my recollection, I don't recall that. It's my understanding that the guidelines were treated as mandatory rather than discretionary. And if they were treated as mandatory rather than discretionary, a limited remand under Ameline would be appropriate. Right. But if the trial court had made such a statement, would you concede that there would be no Ameline? Yes. I would concede to that. And if we can find it in the record? I don't recall if there is one, Your Honor. But if there is such a statement that he said, regardless of the guidelines, that this is what was ----  Okay. Certainly. But unless the Court has any other questions, that's essentially all I really had to say. Thank you. Do you have any cases on the intersection of Crawford versus Bruton in this type of situation? I don't have any direct cases, no, I don't, Your Honor. If the Court would wish to defer the submission of the case, I'd be happy to do the necessary research and submit any brief on any authority I could find. Crawford is so new. I'm wondering if there is such authority. I think there is in the state court level, and I've read it in the summaries that I received from the Public Defender's Office, but I don't recall which case it is. I think it's a Calab decision as well. It's actually an interesting issue. It is. I think there's antagonism between Crawford and Bruton, and I believe, I'm hoping the courts will come to rectify the antagonism. I don't know if it actually is at issue in this case because of the fact that the statements weren't facially incriminating under Richard B. Marsh. Yes. Yeah. Thank you, Your Honor. Thank you. Your Honor, may it please the Court. I'm going to take 13 minutes. My name is Dan Linhart, and I'm responding to the Shepard brief. Ms. Courtney Lynn will be responding to the UCO area. In connection with the sentencing in Shepard, can you answer my question as to whether the district court said that the court would impose the same sentence without regard to the guidelines? On Shepard, I don't believe the court said that. And Mr. Lynn is more familiar with this because he has one of the issues he's taking. On Mr. UCO, I believe the court made it clear that that was a sentence that he was going to give him regardless of anything. It was the top of the guidelines, but Mr. Lynn would be a better one to address that issue. He's prepared for that. Thank you. The first issue before the court is what the standard review is for the statement. The government's position, and I believe it's supported by the evidence, is that it is a plain error standard, that while Mr. Stanford brought up the issue of the Bruton problem, that he then abandoned it when he said, and this is Mr. Stanford, pointed out that I had agreed to redact anything that was Bruton. Mr. Stanford says, oh, that's nice. He then goes on to say, when the court says that solves the concern, Mr. Stanford then says, well, that solves. There's one other point. And then he talks about the potential prejudice to his client because she did not speak to the agents as opposed to Mr. UCO, who did. And that's the objection the court said is noted. So it is the government's position that to the extent that the issue was raised, it was abandoned. The only other time the issue came up was during Colicky when the government moved an exhibit, which I believe was the Miranda warning signed by Mr. UCO. Mr. Stanford again says, I want to reiterate my earlier objection. The court says, well, we took care of that. And so I just want to be overly cautious. The court says, I appreciate that. Mr. Stanford then says, no problem. The court says, any objections? No objections. There's nothing in that that can be construed as any sort of objection. There were no pretrial motions. There were no in limited motions so that the briefs, the cases pointed out in counsel's brief were simply inapposite. As the Crawford issue in general, I believe it simply doesn't apply here, that it's just not implicated. The two issues which the defendant says were implicating him were the statement that Barry UCO made to Agent Dubczyk that he owned TriStar and that Anseline Powell was the biller. Neither implicated Leslie Shepard either by name or by her business, which was Jessup. As the court recalls in Crawford, the wife had testified that certain things had happened with respect to the assault which her husband was charged with and that the husband's defense was self-defense. And the wife had given some testimony that suggested it was not. Clearly implicating the husband, that was testimonial. And if the Crawford decision talks about the right to confront accusers, witness against the accused, it simply didn't happen here. There is nothing in Barry UCO's statement that he was the owner of TriStar, indeed was never contested, or that Anseline Powell was the biller. There is no tension, I believe, between Crawford, in this case, and Richardson and Angwin and Hoack. The defendant seems to be suggesting some sort of subsilentio repeal or overruling of Richardson. In the Crawford decision, the only case that they said in a footnote had tension with Crawford was not Richardson or any of the other cases that we referred to. Are you aware of any cases on this intersection of Crawford, Bruton, and then Richardson? No, I am not. Because I think that the Richardson thing, it simply wouldn't be testimonial. Crawford does say he wasn't going to define. And Richardson, it's because it doesn't directly implicate the defendant. That's correct. Okay, so therefore you're saying it's not testimonial. That would be correct, Your Honor. And I'm not aware of any cases on point. So put aside Richardson, now just Crawford and Bruton. I'm not aware of any, again, because Bruton and Crawford I think are consistent. Bruton says if it's testimonial, this is Sixth Amendment right. Right. So to that extent, I think Bruton and Crawford are consistent. The exception that's carved out, and it's a very big exception in Richardson, is that where it's not facially or expressly or powerfully implicating, it's just it's not testimonial to that as they're looking at it. I don't see anything in Crawford or any of the cases that I've found that suggest that Crawford in any way overrules Richardson. So I'm just not aware of one, Your Honor, if there is one. But I didn't find one in my research. Now, they now argue that it's incriminating because of some connection between the accountants. Between the accountants. Or that they had the same accountants so that the jurors can't. She was actually the biller. And, in fact, the biller testified, Anseline Powell, which is why I think in this case it's one where the Court needn't reach it. I think that the Court can simply say the testimony is such. It's simply not testimonial. You don't even need a Richardson exemption. It simply just had nothing to do with Leslie Shepard. And it did not implicate her in any way. And, in any event, it would be harmless error because there was earlier testimony from Gene Stone, the government's first witness, that Barry Uko owned TriStar. There was never any dispute that Barry Uko was the only owner of TriStar. Leslie was never implicated in that. And Anseline Powell testified herself that, yes, I did the billing for Jessup. I did the billing for TriStar. But I only dealt with Barry Uko. So to the extent that the defendant says that she was hurt, that testimony came in elsewhere. And, again, Anseline Powell, no one ever claimed that she was running a corrupt operation. Her testimony was, I got the information from Barry Uko for all four companies and billed. So that the information is there in any event. So that I would argue that harmless error would certainly be what would apply. The defense raised the issue of no limiting instruction, which did not happen here. There was no limiting instruction asked. The defendant claims that he did, in fact, ask one. If the court were to look, and, again, we cite this in our brief, what Mr. Stanford asked for was a cautionary instruction. And that was directed at the government and the witness, not to mention Shepard or Jessup. And, indeed, it never happened. So there was no request made. I don't think we can second-guess why he didn't make it. He may have thought that the testimony was so obviously unrelated to Leslie Shepard or to Jessup. That to have the court give that limiting instruction would suggest that it might have some relevance. And it may have been simply a tactical move by him. I think the other way the court can look at this, I think, is very significant. In this case, we happen to have a Blakely verdict. And was there any confusion by the jury? Because defense counsel just talked about aiding and abetting for the first time. That may have been a theory. If the jury had thought she was aiding and abetting Barry Uko in everything, in Tristar, they would have returned a verdict that suggested that. The verdict that the jury returned in this case only concerned Jessup. So there was never any confusion. That was the $800,000. That was it. The jury found $800,000. In excess of $800,000, whereas for Barry Uko it found in excess of $2.5 million. The Jessup billing was in excess of $1 million. And that has to be Jessup. Only Jessup could have fit that category. So had the jury confused the two and thought that, in fact, she was completely associated with Mr. Uko, they would have come back in the same way they did, because the lines were there on the verdict form to have come back with a $2.5 million verdict. They did not. Clearly, the jury could compartmentalize this, which would also be our argument with respect to the severance portion raised by a defendant, that the jury did compartmentalize that. And because of the unique situation here where we have a Blakely verdict, we have absolute proof of the jury's ability to do that and that they did do that. The defense on, again, the severance was dealt with. It's, again, a plain error test. The courts have, this court, as all others have talked about, a preference for defendants jointly indicted to be jointly tried together. No antagonistic defenses here. There's no Crawford or Bruton problem. And so, therefore, to ask the court to do a sui sponte severance, I think, simply isn't supported by the record. The inadequate assistance of counsel defense by the defendant, I think, in this matter is not right. This court generally does not allow these at this time. The first prong of Strickland would be that we can't even determine that at this point. The second prong about whether it would be harmful, there was quite a good deal of evidence that came in against the defendant, that she was the sole owner and manager of Jessup, had a bank account with Medicare checks for cash for Jessup, that she endorsed the checks, she spent the money, and testimony that no wheelchairs were provided for people for whom Jessup billed. The loss figure, the defendant has conceded in his brief that the billing was in excess of $1 million. She didn't get that, but that's, I think, a confusion between loss and restitution. And as this court has held numerous times, sentencing is based on attempt under 2B1.1 rather than actual amount gained. The good faith jury instruction, again, there's some question as to the standard review. I think the easy answer is, under any standard, she wasn't entitled to it. This Court has repeatedly held that where there's an instruction on intent, the good faith jury instruction is simply not necessary. I would argue that that, again, was an issue where the defendant had not pressed it. He submitted a jury instruction on good faith where the court said, and I quote his defense counsel statement on page 35 of our brief, the court refused it, saying there just isn't the evidence to justify that. And the only response that we got from Mr. Stanford was, quote, I appreciate that. Thank you. That's not an objection as required under 30D of the federal rules to let the court know there was any sort of real objection where he has to spell out the basis for his objection and exactly what it's being objected to. I think, again, it was abandoned here. In any event, he wasn't entitled to it, both because the intent instruction was given and also because there simply wasn't the evidence. The evidence cited by the defense is that two other witnesses, people who would have been severed, had the defendant's sui sponte, severance motion be granted, said that they originally were suckered in by the defendant, Mr. Ukko, and thought the business was legitimate. What the defense fails to point out is both those individuals pled guilty. Both of them at trial testified. At some point, they realized the business was a sham and a fraud, and so there was no evidence anywhere in the trial to have justified a good faith defense. The Court has no other questions. I will give the floor to Mr. Liff. Thank you. Liff. Good morning. Courtney Liff with the United States. I'm addressing the Ukko appeal. The rule from Ameline 3 was that if the court can't tell, if the record's not clear, if the district judge would have imposed the same sentence, had he or she known that the guidelines were advisory rather than mandatory, then the limited remand procedure is appropriate. The government concedes in the case of Ms. Shepard that the limited remand procedure is appropriate under Ameline 3. She received a low-end sentence. Do you have the full record transcript here? I do, Your Honor. 11-1504 at page 9. Not the extract of the record, but the full record. Your Honor, I have in front of me the record of the sentencing proceeding. All right. I would still impose the same or identical sentence that I imposed on Mrs. Shepard? Is that what the district court said? The district court, as I understand it, said that, Your Honor, but I don't think you can do that. Does that relieve us from requiring an Ameline remand? I don't think so, Your Honor. And the reason is because the Ameline itself was a mid-level guideline sentence. This is a low-end guideline sentence. And although I'm going to make a different argument in the case of Mr. Ukko, I don't think in the case of Ms. Shepard that we can say categorically that the judge knew that the guidelines, had they been advisory, that he might have been. Does it have to be that the trial judge knew that the guidelines were not going to be mandatory, or is it that he understands that if he had the latitude to do it, he would do it? I think it's the latter, Your Honor. Well, isn't that what that statement just that I read just said? I don't think so. What gives the government pause is that the judge imposed a low-end guideline sentence cited to the family factors in justifying it. In fact, the judge indicated he might impose a sentence based on upward departure, but for certain family factors. So I don't think that under the rationale of Ameline 3, we can conclusively say one way or the other. But obviously, I don't want to spend much more time arguing. This is Shepard, right? This is Shepard. So you're going to go back and argue that Shepard should have a higher sentence then? We're going to go back on the limited remand procedure and see what the district judge says. Wait a second. And did Shepard ask for the limited remand? Shepard and Ukko both asked for the limited remand. I just said Shepard. I didn't say that Shepard asked for it. I'm about to argue in the case of Mr. Ukko, I don't think the limited remand is appropriate. Okay. But I just want to get the Shepard story. Both sides want a limited remand on Shepard's despite the court's statement. The government doesn't want it, but the government feels constrained by Ameline 3 to say that we think it's required. Okay. Because I tend to agree with Judge Beezer that where the judge makes a statement on the record, I would do this regardless of the guidelines. That's a pretty clear statement that he would do it regardless, and we don't need to go through this additional procedure. Well, in that case, in deference to the Court, in deference to the fact that Ameline 3 is an en banc decision, I would defer to this Court's judgment about its meaning. But in the government's view, the Barry Ukko case, for example, is very different. In the case of Mr. Ukko, the judge imposed a high-end guideline sentence over probation recommendation of something less than a high-end guideline sentence over defense arguments that the Court imposed a low-end sentence and without even hearing from the government. And to make Judge Beezer's point that he just made about Ms. Shepard, the judge said, I am selecting what I believe to be the appropriate sentence. Is it the government's right to the remand or is it the defendant's right to the remand? In the case of Mr. Ukko, the government does not believe that Ameline 3 controls and the government doesn't ask for a limited remand, although I agree with you, Judge Beezer, there is a risk that Mr. Ukko may get a higher sentence. I just said it in Ameline, but I do – but I said it very, very carefully. And I don't think he made a comment that rises to the level of answering prong 3 of the plein air analysis in Ukko, which is why I can – and it's not as strong as what he said with respect to Shepard. So I mean, obviously, he was applying the mandatory guideline sentencing system. So if Ukko is asking for it, then, you know, he seems to be entitled to it under Ameline. I disagree. The point that Mr. Ukko wants to make when he goes back on limited remand, Your Honor, is he wants to somehow argue that Mr. Ukko shouldn't be responsible for sentencing for all of this loss. But we know the judge's – the district judge's answer to that question because he stated it in his justification for the high-end guideline sentence. That is, Mr. Ukko, you recruited your brother and others into this scheme. The judge took into account that he was responsible for that loss. It did seem that Ukko was the key player in the whole scheme and that somehow the Shepards ended up worse off. But, you know, that's for the district judge. Well, I don't think – I need to spend much more time on this. I think – Let's talk about the forfeiture. Yeah. Let's talk about the forfeiture. Counsel sort of defines somehow that there's an excessive fines analysis that she's just stumbled across. There's nothing new about this. Post-Bajikagian, the Court asks, is the forfeiture grossly disproportionate to the gravity of the offense? In the case of the – in a proceeds case like this where you have $2.3 million in fraud proceeds and no showing that the value of this property exceeds that amount, the forfeiture can never be grossly disproportionate to the gravity of the offense. If the forfeiture were $2.3 million, it would be exactly proportional to the gravity of the offense. That's the point of this Court's decision in Du Bois. That's the point of this Court's decision in Santa Barbara Drive. She recites Little Canyon Road and suggests maybe there should be some sort of instrumentality analysis that it's different, that this is a substitute asset versus a directly forfeitable property like an instrumentality or proceeds. Little Canyon Road's instrumentality analysis was abrogated. This case said so. Little Canyon Road went on to say, pre-Bajikagian, Little Canyon Road didn't have the benefit of Bajikagian, that there are certain harshness factors that this Court should look at in evaluating the severity of the forfeiture, including the personal characteristics of the property, the characteristics of the property owner, how that makes the property owner feel. As Judge Wardlaw pointed out in her dissent in the United States versus $100,348, the Court missed the analysis. In light of Bajikagian, we no longer ask how does the forfeiture make the defendant feel or does the defendant have some intangible subjective value that he attaches to this particular property. That inquiry is no longer relevant. I think it's being used in this context to mislead the Court. Little Canyon Road and those factors don't survive. Finally, I'd add that it's Mr. Ukul's actions that put the government in a position of having to reach to that substitute asset, that so-called family home. It's not the government. It can't willy-nilly pick what it chooses to forfeit. It's because Mr. Ukul has taken the proceeds and put them away to a place that the government can't find them that we're even having this discussion. Thank you, Your Honor. Thank you. Do you have any more questions? Okay. We're going to submit U.S. versus Shepard and Ukul.
judges: Beezer, Hall, Wardlaw